UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**MAURICIO OTTONIEL IXTECOC ESPINOZA,**

        Petitioner,

v.

**JEFFERY CRAWFORD,** *ICA-Farmville Detention Center,* **et al.,**

        Respondents.

Civil No. 2:26cv123

## MEMORANDUM ORDER

On February 5, 2026, Mauricio Ottoniel Ixtecoc Espinoza ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 alleging that he is entitled to a bond hearing under 8 U.S.C. § 1226(a). ECF No. 1, at 6. This Court entered a briefing order, ECF No. 5, and on February 12, 2026, the Federal Respondents filed a brief in opposition and supporting affidavit arguing that Petitioner is properly detained without a bond hearing pursuant to 8 U.S.C. § 1225. ECF Nos. 6, 6-1. Petitioner did not file a reply brief, and the time for filing has expired.

Historically, § 1225 was applied to noncitizens encountered at, or near, designated or undesignated border crossings. In contrast, § 1226 was applied to noncitizens otherwise found within the United States. In 2025, the government, first through an

internal memo and later through a decision by the Board of Immigration Appeals ("BIA"), announced a new interpretation of § 1225. According to this new interpretation, "nearly all noncitizens who entered the United States without inspection" and who are later found to be present anywhere in the United States are subject to <u>mandatory</u> detention without a bond hearing under § 1225(b), "rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." <u>Ortega Miranda v. Bondi</u>, No. 3:25cv769, 2026 WL 287179, at *3 (E.D. Va. Feb. 3, 2026) (citation omitted); <u>see</u> <u>Matter of Yajure Hurtado</u>, 29 I.& N. Dec. 216 (BIA 2025).

Since this BIA decision, and as set forth in greater detail in <u>Ponce Vidal v. Crawford</u>, No. 2:26cv134, 2026 WL 561188 (E.D. Va. Feb. 27, 2026), <u>Sibrian-Juares v. Washington Field Off. Dir.</u>, No. 3:26-CV-29, 2026 WL 414938 (E.D. Va. Feb. 15, 2026), and <u>Romero v. Crawford</u>, No. 3:25cv788, 2026 WL 94634 (E.D. Va. Jan. 13, 2026), judges of this Court, including the undersigned, have consistently held that non-citizens like Petitioner that are arrested within the United States after being in the country for an extended period of time are entitled to a bond hearing under "8 U.S.C. § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures." <u>Sibrian-Juares</u>, No. 3:26cv29, 2026 WL 414938, at *4. However, federal judges do not unanimously agree on the issue, as a divided panel of the Fifth Circuit recently demonstrated. <u>Compare</u> <u>Buenrostro-Mendez v. Bondi</u>, 166 F.4th 494, 502 (5th Cir.

2

2026) (explaining that even though the petitioners were not actively pursuing lawful admission when arrested, they were categorically "seeking admission" under § 1225(b)(2) and therefore had no right to a § 1226(a) bond hearing); with id. at 509 (Douglas, J., dissenting) (reaching the contrary conclusion); see also Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2025) (indicating in a preliminary ruling that the government was "not likely to succeed on the merits of their argument that th[e] individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)").

The Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." Landon v. Plasencia, 459 U.S. 21, 32 (1982). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).[1]

---

[1] Cf. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 118-19 (2020) (explaining that the noncitizen in that case had no basis to challenge his "confinement during the pendency of [his] expedited asylum review" because it was undisputed "that he was apprehended in the very act of attempting to enter this country," meaning that mandatory detention was proper under § 1225(b)(1), further noting that "simply releasing him would not provide

The complexities arising from the interplay between § 1225 and § 1226 are well documented in emerging case law, and a review of relevant cases reveals that both sides of the dispute present multifaceted arguments that offer compelling reasoning. However, this Court ultimately agrees with the outcomes in similar immigration cases from this District, noting specifically its agreement with the constitutional analysis in Romero, 2026 WL 94634, at *5-6 (explaining that the government's interpretation of § 1225 "would raise constitutional problems which the Supreme Court has yet to address"); see Aroca v. Mason, No. 2:26cv57, 2026 WL 357872, at *19 (S.D.W. Va. Feb. 9, 2026) (finding that the petitioner's interpretation of § 1225 and § 1226 "aligns with longstanding constitutional principles" recognizing that "[n]oncitizens physically present in the United States, whether lawfully or unlawfully, are entitled to greater due process protections than those stopped at the border"); Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. CV 25-6312, 2025 WL 3294726, at *7 (E.D. Pa. Nov. 25, 2025) ("[T]he canon of constitutional avoidance counsels against the government's interpretation [of § 1225]."); see also Ortega Miranda, 2026 WL 287179, at *10 (finding that the petitioner's "continued detention

---

the right to stay in the country" because "[w]ithout a change in status, he would remain subject to arrest, detention, and removal" under § 1226(a)).

without a bond hearing violates his right to procedural due process").

Petitioner, who had resided in the United States for more than a year at the time he entered ICE custody, plainly has due process rights.[2] "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation omitted). This right to be heard in a meaningful manner takes on even greater significance when physical detention is at stake, particularly when such detention routinely exceeds a year,[3] is civil in nature, and in the absence of a hearing, would be imposed regardless of whether the detainee has committed any statutorily disqualifying crimes or poses any risk of flight or danger to the public. See Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects."); Aroca, 2026 WL 357872,

---

[2] It is unclear from the record how long Petitioner has been living in the United States. An affidavit from Respondents indicates that he was arrested in November of 2024 in Virginia, arrested again in Virginia in December of 2024, and was ultimately taken into ICE custody in December of 2025. ECF No. 6-1, at 2-3.

[3] Though the data is dated, it appears that removal proceedings that proceed through the appellate stage took more than 450 days as of 2015. See Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges, Gov't Accountability Office, at 33, https://www.gao.gov/assets/690/685022.pdf (last visited Mar. 9, 2026); see also EOIR 2025 Adjudication Statistics https://www.justice.gov/eoir/media/1344791/dl?inline (last visited Mar. 9, 2026) (indicating that the Executive Office for Immigration Review had less than 700,000 pending cases in 2015 but had approximately 3.8 million by 2025).

at *18 ("The Supreme Court has emphasized that 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" (quoting Addington v. Texas, 441 U.S. 418, 425 (1979))).

Accordingly, Petitioner's § 2241 Petition is **GRANTED**.[4] ECF No. 1. Respondents are **ORDERED** to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge **within fourteen (14) days of the date of this Order.**[5] In line with due process requirements, Petitioner is entitled to an opportunity to be heard in a meaningful manner at the bond hearing and to a ruling premised on his own case-specific circumstances. Cf. Mendez Trigueros v. Guadian, No. 1:26cv205, slip op. at 7 (E.D. Va. Feb. 18, 2026) (ordering that the petitioner be released unless he received a second § 1226(a) bond hearing that was "constitutionally compliant").

Respondents are **ORDERED** to file a status report with this Court within **three (3) days** of the bond hearing, stating whether

---

[4] This Court recognizes that Petitioner's prior criminal record and purported failure to appear for state court criminal proceedings will likely complicate any request for bond, ECF No. 6-1, at 7; however, such determination is a matter for the Immigration Judge, not the undersigned.

[5] The Court notes that electronic immigration records state that Petitioner had a hearing on March 5, 2026, and was ordered removed by an immigration judge. https://acis.eoir.justice.gov/en/caseInformation (last visited Mar. 9, 2026). Because any appeal of such ruling is not yet due, it does not appear that the removal order is final. Id. However, an affidavit submitted by Respondents indicates that Petitioner previously "conceded" the charge of removability. ECF No. 6-1, at 3. If Respondents assert that the removal order is in fact final, they may file with this Court a motion to reconsider, along with evidence of the removal order's finality, within seven (7) days from the date of this Order.

6

Petitioner has been granted bond, and, if his request for bond was denied, the case-specific reasons given by the Immigration Judge for that denial.

The Clerk is **DIRECTED** to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Memorandum Order to Petitioner and to counsel for the Federal Respondents, and administratively close this civil action.[6]

**IT IS SO ORDERED.**

/s/ *[signature]*
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 9, 2026

---

[6] Although the case will be administratively closed, the Court retains jurisdiction to ensure compliance with this Order.

7